# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTOPHER SHAND,
      Plaintiff,

      v.                              Case No. 3:21-CV-523 (SVN)

CONNECTICUT DEPARTMENT
OF CORRECTION, et al.,
      Defendants.

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff, Christopher Shand, formerly incarcerated, has filed a Complaint pursuant to 42 U.S.C. § 1983 against 103 defendants, alleging that Defendants provided him with a diet consisting of unhealthily high levels of soy and did not provide him an alternative diet or appropriate medical care for ailments he alleges have resulted from the high soy diet.

Plaintiff's handwritten complaint is difficult to decipher.  *See* ECF No. 1.  But, as best the Court can discern, within the body of the Complaint, Plaintiff describes Defendants as: the State of Connecticut; the Department of Correction; Acting Commissioner Angel Quiros; former Commissioners Rollin Cook and Scott Semple; Deputy Commissioners Cheryl Cepelak and William Mulligan; former Deputy Commissioner Monica Rinaldi; Warden of Northern Correctional Institution ("Northern") John Doe 1; former Wardens of Northern Ann Cournoyer, John Doe 2, William Mulligan,[1] Nick Rodriguez, and Guiliana Mudano; Deputy Warden at Northern; former Deputy Wardens at Northern William Mulligan, Derrick Molden, and Bradway; Warden at Garner Correctional Institution ("Garner") Amanda Hannah; former Warden at Garner

---

[1] Plaintiff names some Defendants in their current and former positions.

John Doe 3; Deputy Wardens at Garner Danielle Borges and David Egan; Warden at MacDougall-Walker Correctional Institution ("MacDougall") Kristen Barone; former Warden at MacDougall William Mulligan; Deputy Wardens at MacDougall Ogando, Maldonado, and Doran; former Deputy Wardens at MacDougall Jesus Guadarama, Joseph Roach, Jeffrey Jeannotte, and David Snyder; Warden at Cheshire Correctional Institution ("Cheshire") Kenneth Butrick; Deputy Wardens at Cheshire Jennifer Peterson and Nunez; former Deputy Warden at Cheshire Jesus Guadarama; Lieutenants at MacDougall Jason Cheney, John Doe 4, John Doe 5, Jane Doe 1, Jane Doe 2, and Jane Doe 3; Correctional Officers at MacDougall Nguyen, John Doe 6, John Doe 7, John Doe 8, and John Doe 9; Correctional Counselors at Cheshire Jane Doe 4 and Jane Doe 5; Correctional Officers at Cheshire Jane Doe 6, John Doe 10, and John Doe 11; Administrative Remedy Coordinators at Cheshire John Doe 12, John Doe 13, and Jane Doe 7; Administrative Remedy Coordinator at Garner John Doe 14; Administrative Remedy Coordinator at Northern Jane Doe 8; Chief Medical Officer Byron Kennedy; former Medical Directors Johnny Wu and Monica Farinella; former Health Services Administrators Brian Picard and Rikel Lightner; Chief Operating Officer at Northern Richard Furey; Chief Operating Officer at Garner Richard Richardson; Chief Operating Officer at MacDougall Kirsten Shea; physician at Northern Dr. Michael Clements; physicians at Cheshire Dr. Ruiz and Dr. Jean Caplan; APRN at Cheshire Deborah Bradley; physician at Garner Dr. Valletta; physicians at MacDougall Dr. Syed Johar Nagvi and Dr. Pillai; nurses at Northern Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, John Doe 15, and John Doe 16; nurses at Garner John Doe 17, Jane Doe 14, Jane Doe 15, Jane Doe 16, and Jane Doe 17; nurses at Cheshire Jane Doe 18, Jane Doe 19, Jane Doe 20, Jane Doe 21, Jane Doe 22, John Doe 18, and John Doe 19; nurses at MacDougall Jane Doe 23, Jane

Doe 24, Jane Doe 25, Jane Doe 26, Jane Doe 27, and John Doe 20; Chief of Food Services Scott Hasfic; former Chief of Food Services Mike Bibens; registered dietician John Doe 21; District Food Services Managers Lance Oliver and John DeLuca; former District Food Services Managers John Doe 22 and John Doe 23; food services supervisor at Northern John Doe 24; food services supervisor at Garner John Doe 25; food services supervisor at Cheshire John Doe 26; and food services supervisor at MacDougall Jane Doe 28.

Defendants Quiros, Cepelak, Barone, Mulligan, Ogando, Maldonado, Doran, and Kennedy are named in individual and official capacities. All other defendants are named in their individual capacities only. Plaintiff seeks damages and extensive injunctive relief.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review civil complaints filed by prisoners and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above:  a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and the Court may not "invent factual allegations" that the plaintiff has not pleaded,

4

*id.*

## II.    FACTUAL BACKGROUND

The Complaint alleges the following facts.[2]  While incarcerated, Plaintiff was required to eat the food provided by the Department of Correction.  *See* ECF No. 1 ("Compl.") ¶ 69.  Since at least mid-2018, Plaintiff has complained about the effects of consuming food high in soy.  *Id.* ¶ 70.  Plaintiff's symptoms include heart problems, arterial blockage, varicose veins, shortness of breath, fluctuations in weight, lumps in the abdomen, fainting, thyroid problems, irritable bowel syndrome, fatigue, vomiting, pain after eating, severe constipation and/or diarrhea, and rashes.  *Id.* ¶ 71.  Plaintiff attributes all the symptoms to eating food high in soy that was supplied to him by the Department of Correction.  *Id.* ¶ 72.

The correctional diet includes, on average, eight servings of soy per week.  *Id.* ¶ 73. Plaintiff requested an alternative diet or medical treatment.  *Id.* ¶ 74.  Plaintiff was not granted a permanent alternative diet and was denied, in his view, "adequate and necessary" medical treatment.  *Id.* ¶ 75.  Some of Plaintiff's symptoms were ignored or misdiagnosed.  *Id.* ¶ 76. Plaintiff has undergone thyroid tests which indicate that he suffers from a condition affecting his thyroid gland.  *Id.* ¶ 77.  He alleges his grievances were denied or ignored.  *Id.* ¶¶ 78-79.

Defendants Cheney, John Does 4-5, and Jane Does 1-3 allegedly harassed Plaintiff at MacDougall by encouraging others to tamper with his food, interfere with his sleep by banging on his cell door, and ripping up or discarding his legal documents.  *Id.* ¶ 27.  They also allegedly

---

[2] For purposes of this initial review only, the Court accepts the facts alleged in the Complaint as true.  *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

placed him on in-cell restraints and threatened that they would make him withdraw any complaint or grievance he might file. *Id.* Defendants Nguyen and John Does 6-9 harassed Plaintiff at MacDougall by tampering with his food, discarding his personal property, ripping up his legal documents, and interfering with his sleep and light. *Id.* ¶ 28. They allegedly threatened that if Plaintiff reported them, he "wo[uldn't] like the consequence." *Id.*

Defendants Jane Does 4-5 and 7-8 and John Does 12-14 allegedly interfered with Plaintiff's efforts to exhaust his administrative remedies. *Id.* ¶¶ 29, 31-33. Defendants Jane Doe 6 and John Does 10-11 allegedly ripped up or discarded Plaintiff's legal documents at Cheshire. *Id.* ¶ 30.

The defendants named in Plaintiff's Complaint can be separated into several categories: supervisory custody/correctional defendants, such as wardens and deputy wardens; food service staff; medical staff; and custody/correctional officers, counselors, and administrative remedy coordinators.

### III.   DISCUSSION

Plaintiff describes his claims as an Eighth Amendment claim, a Fourteenth Amendment claim, Section 1983 claims, and a state law negligence claim. Additionally, although Plaintiff does not include a specific claim for retaliation, he alleges that correctional officers retaliated against him. Thus, given Plaintiff's *pro se* status, the Court will consider the viability of a First Amendment retaliation claim.

For the reasons set forth below, the Court DISMISSES the Complaint in full. Certain claims described below are dismissed **with prejudice**, and others are dismissed **without prejudice** to Plaintiff filing an amended complaint, if Plaintiff can correct the pleading deficiencies addressed in this ruling.

A. <u>Count One – Eighth Amendment Claim</u>

In Count One of the Complaint, Plaintiff asserts that providing meals containing more than twenty-five grams of soy per day constitutes cruel and unusual punishment in violation of the Eighth Amendment.   Compl. ¶ 87.   Plaintiff alleges that the State of Connecticut and the Department of Correction have entered contracts to purchase soy, soy-flour, and other soy-related products for use in inmate meals and, because of these purchases, the meals he was provided contained more than twenty-five grams of soy per day. *Id.* ¶¶ 82-83.  Plaintiff states that he needed to eat the meals provided or starve unless he had sufficient funds to purchase other food from the commissary. *Id.* ¶ 85.  Count One seeks only "preliminary and other injunctive relief." *Id.* ¶ 87.

Because Plaintiff is no longer incarcerated, his requests for injunctive relief are now moot. An inmate's requests for prospective injunctive relief from correctional or medical staff in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, has been released from prison, or has received the relief requested. *See Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) ("When Khalil was released from prison, he no longer had a 'continuing personal stake' in the outcome of this action, and his claims [for declaratory and injunctive relief for alleged violations of his constitutional rights] were rendered moot."); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

Plaintiff is no longer incarcerated. *See* ECF No. 15 (notice of change of address indicating that Plaintiff no longer resides at MacDougall or any other state correction institution). Accordingly, all of Plaintiff's requests for injunctive relief are now moot.  Because Plaintiff

requests only injunctive relief for his Eighth Amendment claims, Count One is dismissed in full.

B. <u>Count Two – Fourteenth Amendment Claims</u>

In Count Two of the Complaint, Plaintiff alleges that by purchasing soy and soy-products, the State of Connecticut and the Department of Correction have violated the Privileges and Immunities Clause and the Due Process Clause of the Fourteenth Amendment.  Compl. ¶¶ 88-95. Plaintiff asserts that, by serving him meals with a high soy content, the State and Department of Correction have failed to provide him an adequate diet.  *See id.* ¶ 75.  Plaintiff notes that persons who consume more than twenty-five grams of soy per day are at risk of various conditions, *id.* ¶¶ 62-68, and alleges that he has suffered bodily injury from these conditions "in one form or another," *id.* ¶ 92.

Plaintiff seeks only "preliminary and other injunctive relief" in Count Two.  *Id.* ¶ 95. However, Plaintiff is no longer incarcerated.  Accordingly, for the reasons set forth above with respect to Count One, Plaintiff's requests for injunctive relief are now moot.  Because Plaintiff requests only injunctive relief for his Fourteenth Amendment claims, Count Two is dismissed in full.

C. <u>Courts Three and Four – Section 1983 Claims</u>

In Counts Three and Four, Plaintiff asserts claims under Section 1983 against all Defendants except Defendants Cheney, Nguyen, Jane Does 1-8, and John Does 4-14.  Compl. ¶¶ 97-115.  In Count Three, Plaintiff alleges that the defendants named in these counts knew that he had complained about the high soy content in the food, personally permitted high-soy food to be served to him, denied him an alternate diet, and refused to permit medical staff to prescribe an alternate diet.  *See id.* ¶¶ 97-105.  In Count Four, Plaintiff alleges that these same defendants were

deliberately indifferent to his medical needs by failing to order an alternate diet in response to his symptoms. *See id.* ¶¶ 107-15. The defendants against whom the Section 1983 claims are asserted include the State of Connecticut, the Department of Correction, supervisory officials, food service staff, and medical staff. The excluded defendants are grievance officials and custody officers.

Plaintiff bases his Section 1983 claims on alleged violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 105, 115. Records available on the Department of Correction website show that, at all times relevant to the Complaint, Plaintiff was a sentenced prisoner. *See* Search Results for Christopher Shand on ctinmateinfo.state.ct.us (showing Plaintiff was sentenced on January 7, 2015). Claims of sentenced prisoners regarding conditions of confinement are considered under the Eighth Amendment, not the Fourteenth Amendment. *See Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981) (for sentenced inmates, "who may be punished, the criterion is whether that punishment is 'cruel and unusual' within the meaning of the Eighth Amendment"). Thus, Plaintiff's Section 1983 claims based on alleged violations of the Fourteenth Amendment in Counts Three and Four are dismissed.

The remainder of this Section addresses Plaintiff's Section 1983 claims to the extent they are based on alleged violations of the Eighth Amendment.

### 1.  State of Connecticut and Department of Correction

Defendant asserts Counts Three and Four against the State of Connecticut and the Department of Correction. However, both Defendants are immune from suit.

The Eleventh Amendment has long been construed as barring a citizen from suing his or her own state in federal court under the principle of "sovereign immunity." *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890) (construing Eleventh Amendment as applying to suits by citizens of a state against their own state); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997) (same).

The State is immune from suit for damages under the Eleventh Amendment unless it has waived that immunity. *See Fla. Dep't of State v. Treasure Salvors*, 458 U.S. 670, 684 (1982). A state loses its Eleventh Amendment immunity only if Congress abrogates this immunity or the state acquiesces to suit. *See Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Congress did not abrogate Eleventh Amendment immunity when it enacted Section 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (citing *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)). Plaintiff alleges no facts suggesting that the State has waived its immunity in this case and, in fact, concedes that the State is immune from suit. *See* Compl. ¶ 60 (acknowledging that the State is immune from suit). Thus, none of Plaintiff's claims against the State of Connecticut are cognizable.

Next, Plaintiff describes the Department of Correction as a municipal corporation. *See id.* ¶ 8. Plaintiff is incorrect. The Department of Correction is a state agency. *See* portal.ct.gov/DOC. A state agency is entitled to immunity under the Eleventh Amendment. *See Bhatia v. Conn. Dep't of Child. & Fams.*, 317 F. App'x 51, 52 (2d Cir. 2009). Moreover, a state agency is not considered a "person" within the meaning of 42 U.S.C. § 1983. *See id.* (state agency is not a "person" within the meaning of 42 U.S.C. § 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)). Thus, the Department of Correction also is immune from suit.

Accordingly, all Section 1983 claims in Counts Three and Four against the State of

Connecticut and the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### 2. Food Service Staff

Defendants Hasfic, Bibens, Oliver, DeLuca, John Does 21-26, and Jane Doe 28 are alleged to work in food service at various correctional facilities.  Plaintiff alleges that these defendants are responsible for serving nutritionally adequate meals and contends that they should have provided him an alternative diet.

First, Plaintiff's claim that many of the food services staff named as defendants should have provided him an alternative diet fails.  Department of Correction Administrative Directive 10.18, entitled Nutrition and Food Service, provides:  "All inmates shall be served the regular menu with the only exceptions being those authorized for therapeutic diets or common fare menu."  Directive 10.18(11), found at portal.ct.gov/DOC/AD/AD-Chapter-10.  Section 9 of the same directive provides that a therapeutic diet is "prescribed by the facility physician."  *Id.* at 10.18(9); *see id.* at 10.18(3) (defining "therapeutic diet" as "[a] diet specially prescribed by a physician for medical reasons").  Plaintiff does not allege that he was prescribed a therapeutic diet by a facility physician.  Thus, the food service staff was required to serve Plaintiff the regular meals.  *See Cosby v. Erfe*, No. 3:15-cv-161 (DJS), 2016 WL 2930886, at *6 (D. Conn. May 19, 2016) (finding that plaintiff "fail[ed] to demonstrate the required causal connection between the actions of defendant . . . and his injuries" where the defendant "was not authorized to make any substitutions to an inmate's menu").  Even the food service supervisors Plaintiff names as defendants, such as the individuals who allegedly held the positions of District Food Service Manager and Correctional Chief of Food Services, would be bound by Administrative Directive 10.18(11).  Plaintiff's recourse, if he suffered from true medical issues on account of his consumption of soy, was to seek

11

entitlement from a physician to a therapeutic diet.  Given that he was not prescribed one, the food services staff followed policy and cannot be liable for providing Plaintiff with the regular menu.

Plaintiff also challenges the nutritional adequacy of the prison diet.  As support for this claim, Plaintiff cites studies performed in other countries questioning the appropriateness of soy for children and persons with certain medical conditions.  The Court finds that these allegations do not sufficiently plead a Section 1983 claim based on the Eighth Amendment against the food service staff.  An inmate must meet two requirements in order to state an Eighth Amendment claim against a prison official based on the inmate's conditions of confinement.  *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020).  First, the inmate must allege that "objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities.'"  *Id.*  Second, the inmate must allege that, "subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'"  *Id.* (alteration in original).  "Conditions of confinement inflict cruel and unusual punishment when they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.'"  *Id.*

The only reported cases challenging the inclusion of soy in the prison diet are from courts in other circuits, and these courts have not permitted a freestanding challenge to a prison diet based on the inclusion of soy.  For example, in *Riley-El v. Godinez*, the court rejected a claim that a soy-rich diet, by itself, put the plaintiff at a serious risk of harm.  No. 13 C 8656, 2015 WL 4572322 (N.D. Ill. July 27, 2015).  The *Riley-El* court cited other cases rejecting similar claims and stated: "Noting the ubiquitousness of soy in the American diet, as well as the fact that the government allows food manufacturers to tout the benefits of soy on food labels, . . . 'society today simply does

12

not see soy protein as a risk to the general population, much less a serious risk.'" *Id.* at *3 (citation omitted). After discussing the requirements for alleging an Eighth Amendment violation, including that a plaintiff "must . . . show that society has chosen not to tolerate the risk at issue," the court found that "the alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation." *Id.* at *4; *see also Catlin v. McNeil*, No. 4:11-cv-624-WS-GRJ, 2012 WL 662296, at *2 (N.D. Fla. Feb. 28, 2012) (rejecting general challenge to inclusion of soy in prison meals) (citing cases). The Court agrees with the analysis in these cases.

Plaintiff alleges no facts showing that the prison diet is not nutritionally adequate for the prison population as a whole. Thus, Plaintiff's general challenge to the nutritional adequacy of his prison diet fails. To the extent Plaintiff is alleging that he needed a therapeutic diet to address his personal medical needs, his recourse was to seek such a diet from the medical department, not food service. The Section 1983 claims in Counts Three and Four against Defendants Hasfic, Bibens, Oliver, DeLuca, John Does 21-26, and Jane Doe 28 are thus dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. Medical Staff

Plaintiff asserts Section 1983 claims against Defendants Picard, Lightner, Furey, Richardson, Shea, Clements, Ruiz, Caplan, Bradley, Valletta, Nagvi, Pillai, John Does 15-20, and Jane Does 9-27, all of whom are alleged to be current and former medical staff members. Plaintiff generally alleges that he sought and was denied adequate medical treatment and underwent tests that showed some thyroid issues.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim

for deliberate indifference to a serious medical need, Plaintiff must allege facts showing both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard.

Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138. A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998).

The defendants also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk that Plaintiff would suffer serious harm because of their actions or inaction. The defendants "need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.*

14

(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838. Nor does a disagreement over the treatment provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment. . . . [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Plaintiff alleges that he has a soy intolerance and includes a list of symptoms he attributes to consumption of soy.  Given that Plaintiff alleges no facts regarding the frequency or severity of the symptoms, the Court is skeptical that he has established he has a serious medical need.  Even assuming that he had made that showing, however, his claim fails.

To state a cognizable Section 1983 claim, Plaintiff must allege facts showing the personal involvement of each defendant in the alleged constitutional violation.  *Costello v. City of Burlington*, 632 F.3d 41, 48-49 (2d Cir. 2011) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  For his deliberate indifference claim, Plaintiff must allege facts showing that each defendant was aware of and disregarded a substantial risk that Plaintiff would suffer serious harm if they failed to act to address his soy issues.  Plaintiff appears to have listed as defendants all persons working in the medical units at the facilities in which he was confined.  Plaintiff generally

alleges that he sought and was denied medical treatment but does not state at which facility he made the requests.  Nor does Plaintiff identify any particular defendant who treated him or denied a request for treatment.  Plaintiff merely assumes that all the medical staff defendants were aware of his medical issues.  Absent allegations showing the personal involvement of the medical staff defendants, Plaintiff fails to state cognizable claims for deliberate indifference to his medical needs.  However, Plaintiff may file an amended complaint against any of the medical staff defendants to address this deficiency.

### 4.  Supervisory Defendants

Plaintiff describes Defendants Quiros, Cook, Semple, Cepelak, Mulligan, Rinaldi, John Doe 1, Cournoyer, John Doe 2, Rodriguez, Mudano, Baymon, Molden, Bradway, Hannah, John Doe 3, Borges, Egan, Barone, Ogando, Maldonado, Doran, Guadarama, Roach, Jeannotte, Snyder, Butrick, Peterson, Nunez, Kennedy, Wu, and Farinella as supervisory officials.  Supervisory officials cannot be held liable merely because they hold supervisory positions.

The Second Circuit has clarified the standard to be applied to a claim of supervisory liability.  *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court rejected a theory of supervisory liability that permitted a supervisor to be "held liable based on a lesser showing of culpability than the constitutional violation requires."  *Id.* at 617 (citing *Iqbal*, 556 U.S. at 677).  Subsequently, in *Tangreti*, the Second Circuit held that, "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

In *Tangreti*, the Second Circuit noted that while "'[t]he factors necessary to establish a §

16

1983 violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," "[t]he violation must be established against the supervisory official directly." *Id.*  Here, Plaintiff's only remaining Section 1983 claims are based on alleged violations of the Eighth Amendment.  "[T]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Id.* at 618-19.  In order to show that the supervisory officials acted with "deliberate indifference," Plaintiff must show that they "personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." *Id.* at 619.

Plaintiff has not adequately pleaded that each supervisory official was personally involved in the Eighth Amendment violations he alleges have occurred.  First, Plaintiff fails to plead that each of the supervisory officials personally knew about an excessive risk to his health or safety.  Plaintiff summarily alleges that the supervisory officials had "personal knowledge" of his grievances and complaints.  *See* Compl. ¶¶ 98-104, 107-12.  Although Plaintiff pleads that the supervisory officials, in general, knew about his grievances, the Complaint contains no allegations to support Plaintiff's claim that each supervisory official was *personally* aware of his grievances.  Plaintiff appears to assume that, because he filed grievances and complaints, each of the supervisory officials knew about them.  The Court finds that these allegations are insufficient to demonstrate personal involvement.

Here, Plaintiff asserts only conclusory allegations that the supervisory defendants knew of his complaints, had the authority to act, and failed to provide the relief he requested.  Plaintiff fails

to allege facts showing that any of the specific supervisory defendants:  were personally aware of his complaints; acted on Plaintiff's complaints or otherwise reviewed and responded to his complaints; or disregarded an excessive risk to Plaintiff's health or safety.  *C.f. Brandon v. Kinter*, 938 F.3d 21, 37 (2d. Cir. 2019) (finding that supervisory defendants were aware of prisoner's complaints where they "*signed off on* one or more of [the plaintiff's] grievance forms" (emphasis added)).  Therefore, Plaintiff's allegations are insufficient to plead Section 1983 claims against the supervisory defendants.  However, Plaintiff may file an amended complaint to address these deficiencies.

### D.  Count Five – Negligence

In Count Five, Plaintiff asserts a state law claim for negligence against all Defendants regarding his medical treatment.  Plaintiff alleges that Defendants have a duty to provide him adequate medical care.  Compl. ¶ 117.  Plaintiff contends that when he presented with symptoms he attributed to consumption of soy, Defendants provided him with treatment they knew would be ineffective.  *Id.* ¶¶ 118-19.  To plead a negligence claim under Connecticut law, Plaintiff must allege facts demonstrating the elements of "duty, breach, causation, and actual injury." *Concepcion v. Green*, No. 3:20-cv-172 (SVN), 2021 WL 5988613, at *10 (D. Conn. Dec. 17, 2021) (citations omitted).

In Count Five, Plaintiff seeks both injunctive relief and damages.  Compl. ¶ 122.  As noted, Plaintiff is no longer incarcerated.  Accordingly, for the reasons stated above, Plaintiff's requests for injunctive relief are now moot.  Thus, Count Five is dismissed to the extent Plaintiff seeks injunctive relief.

Additionally, for the reasons set forth below, Count Five is further dismissed in full as to

all defendants except the medical staff defendants.  The Court will permit Plaintiff to amend his negligence claim for damages to allege any facts showing the personal involvement of the medical staff defendants and that their actions were wanton, reckless, or malicious.

### 1. State of Connecticut and Department of Correction

As explained above, the Eleventh Amendment affords the State of Connecticut and the Department of Correction immunity from suit.  Thus, Count Five is dismissed as asserted against the State of Connecticut and the Department of Correction.

### 2. State Employees

In addition to the State of Connecticut and Department of Correction, Plaintiff's negligence claim is asserted against all other defendants, including all supervisory officials, food service staff, medical staff, grievance officials, and custody officers named in the Complaint.  Plaintiff names Defendants Quiros, Cepelak, Barone, Mulligan, Ogando, Maldonado, Doran, and Kennedy in both their individual and official capacities.  All other defendants are named in their individual capacities only.

Plaintiff's negligence claim pertains only to the alleged inadequacy of the medical treatment provided to him.  In particular, Plaintiff alleges that he was deliberately provided inadequate medical care when he presented with symptoms caused by consumption of soy.  Compl. ¶¶ 118-19.  Plaintiff does not allege that any of the supervisory officials, food service staff, grievance staff, or custody officers provided medical care.  Indeed, as non-medical staff, these defendants were entitled to rely on the medical care provided by the medical staff.  *See Siminausky v. Sean*, No. 3:14-cv-243(VLB), 2017 WL 391425, at *4 (D. Conn. Jan. 24, 2017) (non-medical professionals and correctional officers entitled to rely on opinions and treatment of medical staff);

19

*see also Cerilli v. Cay*, No. 3:14-cv-1551(AWT), 2015 WL 4603460, at *2 (D. Conn. July 29, 2015) (noting custodial staff have no ability to provide medical care).  As a result, the only defendants who could be held liable for Plaintiff's negligence claims are the medical staff defendants.

Even the claims against the medical staff defendants, however, cannot proceed.  Plaintiff alleges that all medical staff defendants are current or former state employees.  Pursuant to state law, state employees cannot be held liable for damages in their individual capacities for claims based only on negligence.  Specifically, Connecticut General Statutes § 4-165 provides:  "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Thus, the medical staff defendants, who are all sued only in their individual capacities, are statutorily immune from any claim for damages based solely on negligence.

Section 4-165 does include an exception for actions found to be wanton, reckless, or malicious.  The current Complaint does not set forth facts suggesting that any of the medical staff defendants acted wantonly, recklessly, or maliciously.  Moreover, as explained above in considering the deliberate indifference to medical needs claim, Plaintiff fails to allege facts showing the personal involvement of each medical staff defendant in his treatment.  Absent allegations showing personal involvement, Plaintiff fails to show that the medical staff defendants breached a duty to him.  *Accord Petty v. City of New Britain*, No. 3:17-cv-1798 (JAM), 2018 WL 587321, at *4 (D. Conn. Jan. 29, 2018) (declining to exercise supplemental jurisdiction over state law claims absent showing personal involvement of the defendants).

Count Five is therefore dismissed in full.  Plaintiff may amend his state law negligence

20

claim against the medical staff defendants only to address the deficiencies in Count Five, including the lack of any factual allegations concerning the personal involvement of the medical staff defendants and whether their actions were wanton, reckless, or malicious.

E. Retaliation

Although Plaintiff does not include a specific claim for retaliation, he does allege that the custody officers retaliated against him. Considering his *pro se* status, the Court will consider the viability of a First Amendment retaliation claim. The Court considers this claim to be asserted against Defendants Cheney, Nguyen, John Does 4-11, and Jane Does 1-3 and 6, the persons Plaintiff identified as custody officers. In his description of the parties, Plaintiff described various acts of harassment: Defendants Cheney, John Does 4-5, and Jane Does 1-3 tampered with his food, interfered with his sleep by banging on his cell door, ripped his legal documents, and placed him in in-cell restraints at MacDougall; Defendants Nguyen and John Does 6-9 tampered with his food, discarded his personal property, ripped his legal materials, and interfered with his sleep at MacDougall; and Defendants Jane Doe 6 and John Does 10-11 ripped his legal materials at Cheshire. Plaintiff further alleges that the defendants at MacDougall threatened to make him pay if he filed a grievance or complaint against them and said they would force him to withdraw any complaint.

To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). The adverse action must have been sufficiently serious that it would

deter a similarly situated person of ordinary firmness from exercising their right to speech. *See id.* at 93-94. "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), *as recognized by Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts consider the circumstances of the particular case when evaluating the second element. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)). A prisoner pursuing a retaliation claim may not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan*, 794 F.3d at 295.

Filing a lawsuit or grievance is protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Espinal*, 558 F.3d at 128-29. Plaintiff generally alleges that he filed grievances. Under the liberal pleading standard applicable on initial review, the Court considers this allegation sufficient to satisfy the first element of a retaliation claim. As adverse actions, Plaintiff identifies various acts of harassment, such as tampering with his food, interfering with his sleep by banging on his cell door, ripping up or discarding his legal documents and personal property, and placing him in in-cell restraints. These allegations are sufficient to plausibly allege adverse action. Accordingly, for the purposes of Section 1915A review, Plaintiff has sufficiently alleged the first and second elements of a First Amendment retaliation claim.

To satisfy the third element of a retaliation claim, Plaintiff must allege facts showing a causal connection between the adverse action and the protected speech or activity. The adverse

actions must be taken in response to, *i.e.*, after the protected activity occurred.  *See Eugenio v. Walder*, No. 06-CV-4928 (CS)(GAY), 2009 WL 1904526, at *10 (S.D.N.Y. July 2, 2009) (rejecting consideration of adverse action occurring before date of protected speech because "any purportedly adverse actions that took place before that date could not have been in retaliation for Plaintiffs' constitutionally protected speech"); *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 453 (D. Conn. 2009) (no causal connection between protected speech and adverse action occurring before speech).  Plaintiff alleges that he was told his life would be made miserable if he filed a grievance or lawsuit about the incidents, or that he would be forced to withdraw any complaint he made.  Because Plaintiff alleges that these alleged adverse actions preceded his protected activity, he fails to satisfy the third element of a retaliation claim.  Additionally, Plaintiff does not sufficiently connect the alleged adverse actions to any of the grievances he claimed he actually filed.  To the extent his Complaint is read to allege a First Amendment violation, then, that claim is dismissed.

However, Plaintiff may amend his Complaint to correct the pleading deficiencies addressed herein.

### ORDERS

Count One, Plaintiff's Eighth Amendment claim for preliminary and other injunctive relief against the State of Connecticut and the Department of Correction, is **DISMISSED as moot, with prejudice**.

Count Two, Plaintiff's Fourteenth Amendment claim for preliminary and other injunctive relief against the State of Connecticut and the Department of Correction, is **DISMISSED as moot, with prejudice**.

Counts Three and Four, Plaintiff's Section 1983 claims, are **DISMISSED with prejudice** as asserted against Defendants State of Connecticut, Department of Correction, Hasfic, Bibens, Oliver, DeLuca, John Does 21-26, and Jane Doe 28.

The Section 1983 claims in Counts Three and Four for deliberate indifference to medical needs against Defendants Picard, Lightner, Furey, Richardson, Shea, Clements, Ruiz, Caplan, Bradley, Valletta, Nagvi, Pillai, John Does 15-20, and Jane Does 9-27 are **DISMISSED without prejudice** to Plaintiff filing an amended complaint alleging facts to show that his medical needs are serious and that these medical providers were personally involved in his treatment, *i.e.*, that they treated him or were otherwise aware of his concerns.

The Section 1983 claims in Counts Three and Four for deliberate indifference to medical needs against Defendants Quiros, Cook, Semple, Cepelak, Mulligan, Rinaldi, John Doe 1, Cournoyer, John Doe 2, Rodriguez, Mudano, Baymon, Molden, Bradway, Hannah, John Doe 3, Borges, Egan, Barone, Ogando, Maldonado, Doran, Guadarama, Roach, Jeannotte, Snyder, Butrick, Peterson, Nunez, Kennedy, Wu, and Farinella are **DISMISSED without prejudice** to Plaintiff filing an amended complaint alleging facts to show that these defendants were personally aware of his complaints, acted on Plaintiff's complaints or otherwise reviewed and responded to his complaints, and disregarded an excessive risk to Plaintiff's health or safety.

Count Five, Plaintiff's state law negligence claim against all Defendants, is **DISMISSED as moot** to the extent Plaintiff seeks injunctive relief.  To the extent Plaintiff seeks damages for negligence against the State of Connecticut, the Department of Correction, and Defendants Quiros, Cook, Semple, Cepelak, Mulligan, Rinaldi, John Doe 1, Cournoyer, John Doe 2, Rodriguez, Mudano, Baymon, Molden, Bradway, Hannah, John Doe 3, Borges, Egan, Barone, Ogando,

Maldonado, Doran, Guadarama, Roach, Jeannotte, Snyder, Butrick, Peterson, Nunez, Kennedy, Wu, Farinella, Hasfic, Bibens, Cheney, Nguyen, Oliver, Deluca, John Does 4-14 and 21-26, and Jane Does 1-8 and 28, Count Five is **DISMISSED with prejudice** in full pursuant to 28 U.S.C. § 1915A(b).

To the extent Plaintiff seeks damages for negligence in Count Five against Defendants Picard, Lightner, Furey, Richardson, Shea, Clements, Ruiz, Caplan, Bradley, Valletta, Nagvi, Pillai, John Does 15-20, and Jane Does 9-27, Count Five is **DISMISSED without prejudice** to Plaintiff filing an amended complaint alleging facts to show that these medical providers were personally involved in his treatment, *i.e.*, that they treated him or were otherwise aware of his concerns, and that their actions were wanton, reckless, or malicious.

Plaintiff's First Amendment retaliation claim against Defendants Cheney, Nguyen, John Does 4-11, and Jane Does 1-3 and 6, is **DISMISSED without prejudice** to Plaintiff filing an amended complaint alleging causation between protected activity and adverse action.

Any amended complaint shall include only the following claims, if the deficiencies explained in this ruling as to these claims can be corrected:

- (1) Plaintiff's Section 1983 deliberate indifference claim against the medical staff defendants (Defendants Picard, Lightner, Furey, Richardson, Shea, Clements, Ruiz, Caplan, Bradley, Valletta, Nagvi, Pillai, John Does 15-20, and Jane Does 9-27);

- (2) Plaintiff's Section 1983 deliberate indifference claim against the supervisory defendants, other than the food service supervisors (Defendants Quiros, Cook, Semple, Cepelak, Mulligan, Rinaldi, John Doe 1, Cournoyer, John Doe 2, Rodriguez, Mudano, Baymon, Molden, Bradway, Hannah, John Doe 3, Borges, Egan, Barone, Ogando,

Maldonado, Doran, Guadarama, Roach, Jeannotte, Snyder, Butrick, Peterson, Nunez, Kennedy, Wu, and Farinella);

- (3) Plaintiff's state law negligence claim for damages against the medical staff defendants (Defendants Picard, Lightner, Furey, Richardson, Shea, Clements, Ruiz, Caplan, Bradley, Valletta, Nagvi, Pillai, John Does 15-20, and Jane Does 9-27); and

- (4) Plaintiff's First Amendment retaliation claim against the custody officer defendants (Defendants Cheney, Nguyen, John Does 4-11, and Jane Does 1-3 and 6).

The Clerk is directed to terminate the following defendants from this action:  the State of Connecticut, the Connecticut Department of Correction, Oliver, DeLuca, Hasfic, Bibens, John Does 12-14 and 21-26, and Jane Does 4-5, 7-8, and 28.

If Plaintiff chooses to file an amended complaint, it shall be filed by **March 21, 2022.**  In addition, the amended complaint shall be written legibly.[3]

Failure to comply with this Order will result in the dismissal of this action.

SO ORDERED at Hartford, Connecticut, this 18th day of February, 2022.


_____/s_____
Sarala V. Nagala
United States District Judge


---

[3] Plaintiff's handwriting is distinctive and difficult to read.  The writing in the Complaint is faint in some places rendering sections of the Complaint nearly illegible.